FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 08, 2022

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WILLIAM J. WRIGHT, a single person,<br><br>Plaintiff,<br><br>vs.<br><br>AIRWAY HEIGHTS CORRECTION CENTER MSU, WASHINGTON STATE DEPARTMENT OF CORRECTIONS, DON MCINTYRE, Health Services Manger 2, and JAMES KEY, Superintendent,<br><br>Defendants. | No. 2:20-cv-00436-MKD<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>ECF No. 38 |

Before the Court is Defendants' Motion for Summary Judgment, ECF No. 38. On October 27, 2022, the Court heard argument on the motion. *See* ECF No. 63. Douglas D. Phelps appeared on behalf of Plaintiff. Taylor M. Hennessey appeared on behalf of Defendants.

Plaintiff's Amended Complaint, filed in Spokane County Superior Court and removed to this Court, *see* ECF Nos. 1, 1-3, brings claims against Airway Heights Correctional Center ("AHCC"), the Washington State Department of Corrections

("WDOC"), Don McIntyre, and James Key alleging (1) a violation of his Fourth, Eighth, and Fourteenth Amendment rights under the U.S. Constitution, pursuant to 42 U.S.C. § 1983; (2) a violation of his article I, sections 3, 7, 14, and 35 rights under the Washington Constitution; (3) *Monell* liability under Section 1983; (4) medical negligence; and (5) negligent training, retention, and supervision. ECF No. 1-3 at 14-19. Defendants have moved for summary judgment on all claims. *See* ECF No. 38. For reasons stated herein, the Court grants Defendants' motion and dismisses all claims in the Amended Complaint with prejudice.

## BACKGROUND

The undisputed facts are as follows. Plaintiff was an inmate incarcerated at AHCC at the times relevant to his Complaint. ECF No. 1-3 at 9-10 ¶ 1.1; ECF No. 4 at 1 ¶ 1.1. Defendant WDOC operates AHCC. ECF No. 1-3 at 10 ¶ 1.2; ECF No. 4 at 1-2 ¶ 1.2. Defendants James R. Key and Don McIntyre are employed at AHCC as a superintendent and health services manager, respectively. ECF No. 1-3 at 10 ¶¶ 1.4-1.5; ECF No. 4 at 2 ¶¶ 1.4-1.5.

On August 13, 2015, Plaintiff consulted with Dr. Craig Barrow concerning left foot pain. ECF No. 39 at 3 ¶ 7; ECF No. 49 at 2. On September 18, 2015, Dr. Barrow performed a surgery to remove medical hardware from Plaintiff's left foot. ECF No. 39 at 3 ¶¶ 7-8; ECF No. 49 at 2.

Plaintiff's pain continued, and on September 1, 2018, Plaintiff sent a request to AHCC staff for further surgery to address ongoing pain in his left foot. ECF No. 39 at 4 ¶ 11; ECF No. 49 at 5-6. That request was forwarded to AHCC's Care Review Committee ("CRC")[1], who ultimately declined to authorize further surgery on October 24, 2018. ECF No. 39 at 4 ¶¶ 11-12; ECF No. 49 at 6. In its report declining further surgery, the CRC referenced the opinion of a WDOC orthopedist, who opined that "[n]othing on the x-ray requires surgery[,]" surgery would not improve Plaintiff's pain, and Plaintiff was able to perform his activities of daily living. ECF No. 39 at 4 ¶ 12; ECF No. 49 at 6; ECF No. 47-5 at 4. The CRC recommended stiff-soled shoes with rocker bottoms for both feet to help alleviate Plaintiff's pain. ECF No. 39 at 4 ¶ 13; ECF No. 49 at 6; ECF No. 47-5 at 4.

_____

[1] According to WDOC policy, the CRC is responsible for "assur[ing] the appropriateness of purchased health care services given to incarcerated individuals" by "review[ing] cases, their proposed treatment[,] and grant[ing] or den[ying] authorization" for that treatment. ECF No. 43-1 at 3-4. The CRC that denied Plaintiff's surgery request was comprised of numerous medical-professional voting members, including six medical doctors ("MDs"), one osteopathic doctor ("DO"), 10 certified physician assistants ("PA-Cs"), and five advanced registered nurse practitioners ("ARNPs"). *See* ECF No. 47-5 at 4.

On December 17, 2019, Plaintiff consulted with Dr. Jacqueline Babol, a community provider and podiatrist, concerning his left foot condition.  ECF No. 1-3 at 12 ¶ 2.16; ECF No. 39 at 4 ¶ 14; ECF No. 41-5 at 4-5; ECF No. 49 at 6. Dr. Babol did not subsequently perform surgery on Plaintiff's left foot.  ECF No. 39 at 4-5 ¶ 14; ECF No. 49 at 6.

Plaintiff transferred to a work release program on March 31, 2021, and was released from custody on July 29, 2021.  ECF No. 39 at 5 ¶ 15; ECF No. 49 at 6.

Plaintiff filed an initial Complaint on September 2, 2020, and an Amended Complaint on November 3, 2020, both in Spokane County Superior Court.  ECF Nos. 1-1, 1-2, 1-3.  Defendants filed a notice of removal on November 25, 2020, and answered the Amended Complaint on December 2, 2020.  ECF Nos. 1, 4.

Defendants filed the instant motion on July 11, 2022.  ECF No. 38.

## SUMMARY JUDGMENT STANDARD

A district court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019).  "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor."  *Fresno Motors, LLC v. Mercedes Benz USA,*

1    *LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (quoting *Anderson v. Liberty Lobby,*

2    *Inc.*, 477 U.S. 242, 248 (1986)).

3          The moving party "bears the initial responsibility of informing the district

4    court of the basis for its motion, and identifying those portions of 'the pleadings,

5    depositions, answers to interrogatories, and admissions on file, together with the

6    affidavits, if any,'" that demonstrate the absence of a genuine dispute of material

7    fact. *Celotex*, 477 U.S. at 323 (quoting former Fed. R. Civ. P. 56(c)).  A moving

8    party who does not bear the burden of persuasion at trial can succeed on summary

9    judgment either by producing evidence that negates an essential element of the

10   nonmoving party's claim or defense, or by showing that the nonmoving party does

11   not have enough evidence to prove an essential element.  *Nissan Fire & Marine*

12   *Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

13         Once the moving party has satisfied its burden, to survive summary

14   judgment, the non-moving party must demonstrate by affidavits, depositions,

15   answers to interrogatories, or admission on file "specific facts" showing that there

16   is a genuine dispute of material fact for trial.  *Celotex*, 477 U.S. at 324.

17         The Court "must view the evidence in the light most favorable to the

18   nonmoving party and draw all reasonable inference in the nonmoving party's

19   favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018). "Credibility

20   determinations, the weighing of the evidence, and the drawing of legitimate

1    inferences from the facts are jury functions, not those of a judge . . ." *Liberty*

2    *Lobby*, 477 U.S. at 255.  "Summary judgment is improper 'where divergent

3    ultimate inferences may reasonably be drawn from the undisputed facts.'" *Fresno*

4    *Motors*, 771 F.3d at 1125 (quoting *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d

5    975, 988 (9th Cir. 2006)).

6                                **DISCUSSION**

7    **A. Allegations Concerning 2015 Surgery**

8              In his responsive pleadings, Plaintiff offers factual allegations relating to

9    Dr. Barrow's 2015 surgery in support of his claims.  *See* ECF No. 49 at 5-6

10   ("Mr. Wright was experiencing severe pain from his left foot and sought the

11   previously recommended surgery. . . .  Surgery that Dr. Barrow had wanted to

12   schedule with the Department of Corrections . . .  Dr. Barrow recommended

13   surgery on September 18, 2015.  This decision by CRC . . . was contrary to

14   Dr. Barrow's records and recommendation to patient. . . .  The CRC declined

15   treatment refusing to provide surgical treatment recommended by Dr. Barrow[.]").

16   Plaintiff's Amended Complaint makes only incidental references to Dr. Barrow's

17   2015 surgery and does not offer allegations against Defendants for their conduct in

18   2015 and 2016.  *See* ECF No. 1-3 at 10-11 ¶¶ 2.1-2.3, 13 ¶ 2.21.  In opposition to

19   this motion, Plaintiff seeks to relate his claims back to decisions allegedly made by

20   the CRC near the time of Dr. Barrow's 2015 hardware removal surgery.  At the

1    hearing, Plaintiff's counsel argued that Defendants' employees discouraged

2    Dr. Barrow from performing the surgery he had recommended in 2015, and that

3    this at least represented a factual dispute weighing against summary judgment.

4          Plaintiff cannot rely upon factual allegations from 2015 and 2016 to support

5    his claims.  First, there are no facts indicating that Defendants Key or McIntyre, or

6    the CRC, to the extent Plaintiff alleges that Defendants were responsible for the

7    CRC, had any involvement with Plaintiff's medical care in 2015 and 2016.[2]

8    Second, Plaintiff has not given proper notice that any of his claims against

9    Defendants derive from medical care in 2015 or 2016.  "Federal Rule of Civil

10    Procedure 8(a)(2) requires that the allegations in the complaint give the defendant

11    fair notice of what the plaintiff's claim is and the grounds upon which it rests,"

12    which is not satisfied by "vague references" to underlying facts.  *Lehman v.*

13    *Nelson*, 862 F.3d 1203, 1211, 1213 (9th Cir. 2017) (quotations omitted).  Vague

14    references to the medical care Plaintiff received in 2015 were insufficient to put

15    Defendants on notice that Plaintiff was asserting a claim based on their 2015

16    conduct.  Plaintiff has not sought leave to further amend the complaint and may not

17

18    [2] It is not clear whether Defendants Key and McIntyre worked for Defendants

19    WDOC or AHCC in 2015 and 2016.  For example, Defendant McIntyre states he

20    has held his current WDOC position since September 2017.  ECF No. 40 at 1 ¶ 2.

do so in argument opposing summary judgment.  *See Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008); *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006); *Wasco Prods. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).  Finally, as Defendants point out, the applicable statute of limitations for these events has likely expired,[3] although the Court need not make specific findings of untimeliness at this time.

Plaintiff presents no evidence that Dr. Barrow recommended further surgery as medically necessary, let alone evidence that Defendants ignored that surgery recommendation.  At Plaintiff's follow-up appointment in October 2015, Dr. Barrow did not recommend further surgery as medically necessary, notwithstanding Plaintiff's continuing toe pain.  ECF No. 47-2 at 15; ECF No. 23-

----

[3] For Section 1983 actions, federal courts generally apply the forum state's personal-injury statute of limitations.  *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014).  In Washington, Section 1983 claims follow the three-year statute of limitations for personal injury actions.  *Boston v. Kitsap Cnty.*, 852 F.3d 1182, 1185 (9th Cir. 2017).  Similarly, the state statute of limitations for health care-related injury claims is three years from the alleged act or omission of malpractice or one year from the time the patient discovered the resulting injury, whichever is later.  Wash. Rev. Code § 4.16.350.

16 at 11-12.

It would be procedurally and factually unfounded to construe Plaintiff's claims to include alleged conduct from 2015 and 2016. Plaintiff's claims are therefore limited to the allegations in the Amended Complaint, which concern Defendants' alleged conduct from September 2018 forward.

**B. 42 U.S.C. § 1983 Claims**

Section 1983 provides that "[e]very person who, under color of [law] of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must show that he was deprived of a constitutional right by a state official acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (internal quotation marks and citations omitted).

*1. Persons Subject to Section 1983 Suit*

Plaintiff raises his Section 1983 claim against all four Defendants. ECF No. 1-3 at 14-15 ¶ 3.24. Defendants seek summary judgment on all Section 1983 claims on the basis that Plaintiff has named defendants who are not subject to suit under Section 1983. ECF No. 38 at 7-8.

1    State agencies and state officials sued in their official capacity are

2    categorically not subject to suit under 42 U.S.C. § 1983.  *Will v. Mich. Dep't of*

3    *State Police*, 491 U.S. 58, 70 (1989).  In the Amended Complaint, Plaintiff

4    identified Defendant WDOC as "a State Agency," Defendant AHCC as "a

5    governmental entity," and Defendants Key and McIntyre by their job titles at

6    AHCC and as residents of Spokane County.  ECF No. 1-3 at 10 ¶¶ 1.2-1.5.

7    Plaintiff's response does not dispute that Defendants WDOC and AHCC, as state

8    agencies, and Defendants Key and McIntyre in their official capacities are not

9    subject to suit under Section 1983.  *See Will*, 491 U.S. at 70-71.

10    Rather, Plaintiff cites Wash. Rev. Code § 4.92.090, which provides that

11    "[t]he State of Washington, whether acting in its governmental or proprietary

12    capacity, shall be liable for damages arising out of its tortious conduct to the same

13    extent as if it were a private person or corporation."  ECF No. 47 at 11.  But, as

14    found by the Supreme Court of Washington, Wash. Rev. Code chapter 4.92 does

15    not render Washington state entities subject to Section 1983 suits.  *Edgar v. State*,

16    595 P.2d 534, 538-39 (Wash. 1979) (en banc); *see also Rains v. State*, 674 P.2d

17    165, 170 (Wash. 1983) (en banc).  Accordingly, Plaintiff has failed to show a

18    genuine dispute of material fact concerning the immunity of Defendants WDOC

19    and AHCC and of Defendants Key and McIntyre in their official capacities.  The

20    Court grants summary judgment for Defendant WDOC, Defendant AHCC, and

Defendants Key and McIntyre in their official capacities on all of Plaintiff's

Section 1983 claims.

However, state officials sued in their individual capacities may be subject to

suit under Section 1983. *Hafer v. Melo*, 502 U.S. 21, 23, 25 (1991). When a

complaint seeks damages under Section 1983 from state officials but does not state

whether the officials are sued in an official or individual capacity, courts must

presume that the officials are sued in their individual capacities. *Shoshone-*

*Bannock Tribes v. Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)

(citations omitted). The Court therefore considers whether Plaintiff's Section 1983

claims may proceed against Defendants Key and McIntyre (hereinafter, the

"Individual Defendants") in their individual capacities.

    *2. Section 1983 Claims Against the Individual Defendants*

Plaintiff's Section 1983 claim alleges that Defendants deprived him of his

Fourth, Eighth, and Fourteenth Amendment rights[4] by denying him medical care.

---

[4] A Section 1983 claim for unconstitutional treatment in detention may arise from

the Fourth, Eighth, or Fourteenth Amendments, depending on the timing of the

alleged constitutional rights violation. If the alleged violation occurred during a

plaintiff's arrest or pretrial detention, the claim arises under the Fourth or

Fourteenth Amendments, respectively. *See Graham v. Connor*, 490 U.S. 386, 394

1  ECF No. 1-3 at 14-15 ¶¶ 3.1-3.25.  Defendants seek summary judgment on three

2  alternative grounds—that the Individual Defendants played no personal or

3  supervisory role in the alleged conduct, that no constitutional violation occurred,

4  and that qualified immunity nevertheless applies as a matter of law.  ECF No. 38 at

5  8-16.

6      Prison officials' "deliberate indifference to serious medical needs of

7  prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed

8  by the Eighth Amendment," and provides a cause of action under Section 1983.

9  *Estelle v. Gamble*, 429 U.S. 97, 102, 104-05 (1976) (citations and quotation

10  omitted).  This includes the deliberate indifference manifested by "prison guards in

11  intentionally denying or delaying access to medical care or intentionally interfering

12  with the treatment once prescribed."  *Id.* at 104-05 (footnotes omitted).  But there

13

_____

14  (1989); *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en

15  banc) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).  If a plaintiff is serving a

16  criminal sentence at the time of the alleged violation, the claim arises under the

17  Eighth Amendment.  *Castro*, 833 F.3d at 1067.  Here, there is no dispute that

18  Plaintiff was serving a criminal sentence at all relevant times, so his Section 1983

19  claim arises from the Eighth Amendment.  *See* ECF No. 1-3 at 9-10 ¶ 1.1; ECF No.

20  39 at 5 ¶ 15.

1   is no vicarious liability under Section 1983: supervisory officials may only be

2   liable "if (1) he or she is personally involved in the constitutional deprivation, or

3   (2) there is a sufficient causal connection between the supervisor's wrongful

4   conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977

5   (9th Cir. 2013) (citation and quotation omitted).  Further, defendants "cannot be

6   supervisors of persons beyond their control"—for example, of persons not within

7   the defendant's chain of command. *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th

8   Cir. 2018) (citations omitted).

9       Defendants argue Plaintiff has provided no evidence showing that the

10  Individual Defendants were personally involved in the decision to deny Plaintiff's

11  surgery request.  ECF No. 38 at 12.  It is undisputed that this denial came from the

12  CRC, not the Individual Defendants.  ECF No. 39 at 4 ¶ 12; ECF No. 49 at 6.  At

13  most, the Individual Defendants responded to Plaintiff's requests for administrative

14  information on the CRC's decision. *See* ECF No. 38 at 12; ECF Nos. 41-2, 41-4,

15  41-6, 41-8.  Therefore, Plaintiff must demonstrate that the Individual Defendants

16  are liable as supervisors.

17      In *Brock v. Wright*, the Second Circuit affirmed summary judgment in favor

18  of non-medical prison officials in a similar Section 1983 suit.  315 F.3d 158, 167-

19  68 (2d Cir. 2003).  The plaintiff, a state prisoner, developed a keloid on his right

20  cheek that caused severe pain with facial movements and interfered with his ability

1    to eat, sleep, and brush his teeth on the affected side. *Id.* at 161. A prison

2    physician and nurse both referred the plaintiff to a dermatologist, but the prison's

3    regional medical director denied the referral as "cosmetic." *Id.* The prison's

4    grievance review committee, comprised of non-medical prison staff, voted to

5    permit the plaintiff's dermatology consult, but the prison superintendent

6    overturned the committee's vote in deference to the medical director's decision.

7    *Id.* at 162. The plaintiff unsuccessfully appealed the superintendent's decision. *Id.*

8    The plaintiff later brought a Section 1983 suit against the superintendent and the

9    Inmate Grievance Program director, among others, for Eighth Amendment

10   violations. *Id.*

11        The Second Circuit affirmed summary judgment for the superintendent and

12   grievance-program director. *Id.* at 164-65. The court found that the

13   superintendent's "automatic and complete deference" to the regional medical

14   director's decision was insufficient proof of deliberate indifference to survive

15   summary judgment. *Id.* at 164. The court reasoned that the superintendent "had

16   no medical training," and even if he knew the full extent of the plaintiff's

17   condition, there was no evidence indicating that he thought the dermatology

18   consultation "would be necessary or even useful" after the medical director "had

19   clearly indicated that it would not" be so. *Id.* Similarly, the grievance-program

20   director was a nonvoting member of the committee that voted to deny the

1    plaintiff's grievance appeal.  *Id.* at 164-65.  There was no evidence that the

2    grievance-program director had any power to control the committee's decisions or

3    membership.  *Id.* at 165.  Moreover, there was no evidence the committee had any

4    medical training or should have otherwise known that a dermatology consult was

5    medically necessary given the regional medical director's contrary opinion.  *Id.*

6    　　Here, the same reasoning applies with greater force.  Plaintiff asserts,

7    without citation to the record, that the Individual Defendants are "responsible for

8    inmates care and suffering resulting from deliberate indifference to inmate medical

9    care" and "for management of inmate care[,] which includes medical staff."[5]  ECF

10   No. 49 at 2.  He also argues that the Individual Defendants had personal

11   knowledge of his foot pain and surgery requests.  ECF No. 47 at 12 ("It is

12   uncontested that the Department of Corrections, Airway Heights MSU, Don

13   McIntyre, and James Key knew [he] was in pain and was seeking the approval to

14   have his foot surgery to relieve this extreme pain[.]").  The record indicates that the

15

16   ──────────────

     [5] Local Civil Rule 56(c)(B) requires a party opposing a motion for summary

17   judgment to file a Statement of Disputed Material Facts "cit[ing] to the specific

18   page or paragraph of the record where the disputed fact is found."  LCivR

19   56(c)(B).  "The Court may consider a fact undisputed and admitted unless

20   controverted by the procedures set forth in LCivR 56(c)."  LCivR 56(e).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 15

Individual Defendants were aware of Plaintiff's pain complaints by September 27, 2018. ECF No. 41 at 2 ¶ 4; ECF No. 40 at 2 ¶ 4. Even if the Individual Defendants understood the full extent of Plaintiff's condition, there is no evidence that the Individual Defendants had any medical training or any other basis to dispute the medical opinions of a dozen (or more) licensed medical professionals.[6]

Nor is there evidence that the Individual Defendants had any authority to control the CRC. Defendant Key states in his declaration that the medical care of AHCC inmates is not within the Superintendent's span of control or chain of command. ECF No. 41 at 2 ¶ 3. Defendant Key previously stated in his November 6, 2018 letter to Plaintiff's counsel that "Health Services is not under [his] span of control or in [his] chain of command." ECF No. 41-2 at 2. Defendant Key notified Plaintiff's counsel that "[t]he AHCC Health Services Department Reports to the Health Services Administrator at DOC Headquarters in Tumwater." ECF No. 41-2 at 2. Defendant McIntyre states in his declaration that he handles administrative supervision, but not clinical supervision, of AHCC health service staff. ECF No. 40 at 1-2 ¶ 3.

Dr. Lisa Anderson-Longano attaches to her declaration an excerpt from the

---

[6] Plaintiff's surgery request was denied by majority vote of the CRC, which had 22 licensed medical providers as voting members. *See* ECF No. 47-5 at 4.

2020 WDOC Offender Health Plan ("OHP"), which details agency policies for authorizing state-covered inmate medical care.  ECF No. 43 at 3 ¶ 7.  According to the OHP, all authorization decisions must be made by a licensed medical provider, the CRC, or a licensed medical official like the Chief Medical Officer or Facility Medical Director.[7]  ECF No. 43-1 at 2-4.  "Other health care staff (for example, health care managers or custody representatives)" may attend and participate in CRC meetings but "are not considered voting members."[8]  ECF No. 43-1 at 4-5.

_____

[7] Dr. Anderson-Longano's excerpt does not include the OHP's definitions of "provider," "practitioner," "Chief Medical Officer," and "Facility Medical Director."  The Court refers to the definitions in Section IV of the 2022 version of the OHP, which is accessible on the WDOC website at https://www.doc.wa.gov/docs/publications/600-HA001.pdf (last visited Dec. 8, 2022).

[8] Defendant McIntyre may have been allowed to participate in CRC meetings as a non-voting member.  The OHP states that "[o]ther health care staff (including Health Care Managers . . .) are welcome and encouraged to attend in participate in CRC meetings, especially if they have knowledge about the patient that may be of benefit to CRC or help with deliberations regarding patient care."  ECF No. 43-1 at 4 ¶ 3.  Defendant McIntyre is once described as a "health care manager" instead of

1    The OHP authorizes the Chief Medical Officer to override decisions made by

2    individual practitioners or the CRC; the policy does not allow prisoners to appeal

3    CRC decisions to non-medical personnel.  *See* ECF No. 43-1 at 4.  These policies

4    reflect the principle that persons without a medical license should not be able to

5    overturn a licensed medical provider's clinical decisions about patients' medical

6    care.  Plaintiff has provided no evidence to create a genuine dispute about the

7    Individual Defendants' ability to control or override decisions made by the CRC.

8         No reasonable jury could find for Plaintiff on the issue of supervisor liability

9    under the current record.  Therefore, the Court grants summary judgment on

10   Plaintiff's Eighth Amendment claim against the Individual Defendants.[9]

11   **C. State Constitutional Claims**

12        Plaintiff claims that Defendants violated his rights under article I, sections 3,

13   7, 14, and 35 of the Washington Constitution, concerning due process, privacy

14   _____

15   a "health services manager."  *See, e.g.*, ECF No. 41-2 at 2.  But this suggests, at

16   most, that Defendant McIntyre held the same position as the grievance-program

17   director in *Brock*.  *See* 315 F.3d at 164-65.

18   [9] Given the Court's findings on the matter of supervisory liability, there is no need

19   to address Defendants' arguments on whether a constitutional violation occurred

20   and whether qualified immunity applies.

1    protections, excessive punishment, and the rights of crime victims.  ECF No. 1-3 at

2    14 ¶ 3.23.  ECF No. 1-3 at 14 ¶ 3.23.  Defendants seek summary judgment, arguing

3    that there is no cause of action under state law for violations of state constitutional

4    rights.  ECF No. 38 at 16.  In his response, Plaintiff mentions only the article I,

5    section 3 claim and argues that this section "provides the same protections as the

6    14th Amendment."  ECF No. 47 at 10-11 (citing *Yim v. City of Seattle*, 451 P.3d

7    694, 699 (Wash. 2019)).  A party may abandon a claim by failing to raise it in

8    opposition to a motion for summary judgment.  *Shapiro v. United States*, 634 F.3d

9    1055, 1060 (9th Cir. 2011).  Plaintiff appears to have abandoned his state

10   constitutional law claims.

11         Nevertheless, Defendants are entitled to summary judgment on Plaintiff's

12   state constitutional claims.  Section 1983 does not provide a cause of action for

13   violations of state constitutional rights, nor is such a cause of action created by

14   Washington law.  *Peltier v. Sacks*, 328 F. Supp. 3d 1170, 1184-85 (W.D. Wash.

15   2018) ("Washington law contains no counterpart to 42 U.S.C. § 1983 . . . .

16   Washington courts have consistently rejected invitations to establish a cause of

17   action for damages based upon constitutional violations . . . [and] refused to

18   recognize a cause of action for a constitutional violation when plaintiffs may

19   obtain adequate relief under the common law.") (citing *Sisley v. City of Seattle*,

20   2014 WL 448656, at *2 (2014); *Blinka v. Wash. State Bar Ass'n*, 36 P.3d 1094,

1102 (Wash. Ct. App. 2001); *Reid v. Pierce Cnty.*, 961 P.2d 333, 343 (Wash. 1998)

(en banc)).  Moreover, the argument Plaintiff raises in his response—that

Washington's due process standard mirrors the Fourteenth Amendment standard—

provides no support for his state due process claim.  As noted above, it is the

Eighth Amendment, not the Fourteenth Amendment, that applies to Plaintiff's

Section 1983 claim.  Under Plaintiff's reading of *Yim*, summary judgment is just as

appropriate for Plaintiff's state constitutional due process claim as it would be for a

Fourteenth Amendment, pretrial-detention Section 1983 claim.  *See* 451 P.3d at

699.

The Court therefore grants summary judgment in favor of Defendants on

Plaintiff's state constitutional claims.

**D. *Monell* Liability**

Plaintiff claims that Defendants are subject to *Monell* liability because their

training policies "were not adequate to prevent violations of law by [their]

detention officers and/or medical staff" of Plaintiff's Eighth and Fourteenth

Amendment rights.  ECF No. 1-3 at 18-19 ¶¶ 6.1-6.23.  Defendants seek summary

judgment on the grounds that Defendants are not entities who are subject to *Monell*

liability.  ECF No. 38 at 7.  Plaintiff's response only briefly mentions his *Monell*

claim.  ECF No. 47 at 1.

Under *Monell v. Department of Social Services of the City of New York*,

1    municipalities and local governments may be held liable under Section 1983 for

2    policies or customs that violate constitutional rights.  436 U.S. 658, 694 (1978).

3    State agencies and employees cannot be liable under a *Monell* unconstitutional-

4    policy theory.  *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher*

5    *Educ.*, 616 F.3d 963, 968 (9th Cir. 2010) (citing *Will*, 491 U.S. at 71).  The

6    Defendants here are state—not municipal or local—agencies and employees.  The

7    Court grants summary judgment for Defendants on Plaintiff's *Monell* claim.

8    **E.  Common Law Negligence[10]**

9        *1.  Medical Negligence*

10       Plaintiff claims that Defendants acted negligently in denying or failing to

11   respond to Plaintiff's requests for medical care.  ECF No. 1-3 at 17-18 ¶¶ 5.1-5.27.

12

13   _____

     [10] The Court has granted summary judgment on the federal question claims at

14   issue.  The state law claims amount arise out of the same "case or controversy" and

15   therefore the Court retains jurisdiction over them.  28 U.S.C. § 1367(a); *see also*

16   *Acri v. Varian Assocs.*, 114 F.3d 999, 1000 (9th Cir. 1997) (en banc) (footnote,

17   quotation, and citation omitted) (". . . when there is power to hear the case under §

18   1367(a), the district court may exercise supplemental jurisdiction over state law

19   claims without *sua sponte* addressing whether it should be declined under §

20   1367(c)."), *reh'g denied*, 121 F.3d 714 (9th Cir. 1997).

Defendants seek summary judgment, arguing that Plaintiff has not properly disclosed any expert witnesses who can establish the applicable standard of care and causation, as is generally required under Washington law.  ECF No. 38 at 17-19.  In response, Plaintiff argues that these elements can be established through lay understanding of the facts and that he has complied with his disclosure obligations to call Dr. Barrow, Dr. Babol, and Dr. Porter as "medical witness[es]."  ECF No. 47 at 15-17.

Under state law, a plaintiff seeking "damages for injury occurring as the result of health care" must establish one of the following by preponderance:

(1) That injury resulted from the failure of a health care provider to follow the accepted standard of care;

(2) That a health care provider promised the patient or his or her representative that the injury suffered would not occur; [or]

(3) That injury resulted from health care to which the patient or his or her representative did not consent.

Wash. Rev. Code § 7.70.030.  Plaintiff's negligence claim falls squarely under subsection (1).  *See* ECF No. 1-3 at 17-18 ¶¶ 5.19, 5.21, 5.25.  To prove a claim under subsection (1), Plaintiff must show (a) that the health care provider failed to exercise that degree of care, skill, and learning expected of a similar Washington provider of reasonable prudence and under similar circumstances; and (b) that "such failure was a proximate cause of the injury complained of."  Wash. Rev. Code § 7.70.040.  "[E]xpert testimony will generally be necessary to establish the

standard of care . . . and most aspects of causation."  *Young v. Key Pharms., Inc.*, 770 P.2d 182, 189 (Wash. 1989) (en banc) (internal citation and quotation marks omitted).

As a threshold matter, Plaintiff disclaims any intent to call Dr. Barrow, Dr. Babol, or Dr. Porter as expert witnesses.  ECF No. 47 at 16-17.  Plaintiff previously described Dr. Barrow and Dr. Babol as expert witnesses in his initial disclosure to Defendants, though he provided no written reports or summaries of anticipated testimony as required by Federal Rule of Civil Procedure 26(a)(2)(B)-(C).  *See* ECF No. 42-2 at 2-3.  He now identifies these three physicians as "medical witnesses" that were "not required to be part of the initial disclosures." ECF No. 47 at 16.

Treating physicians are generally fact witnesses to the treatment they rendered, rather than witnesses "retained or specially employed to provide expert testimony," as long as their opinion testimony is limited to opinions formed during the course of their treatment.  *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 824, 826 (9th Cir. 2011) (quoting Fed. R. Civ. Pro. 26(a)(2) advisory committee's note (1993)).  In such cases, disclosures of treating physicians must simply comply with the requirements of Federal Rule of Civil Procedure 26(a)(2)(C) by providing the subject matter on which the witness is expected to present expert testimony and a summary of the facts and opinions to which the

witness is expected to testify. *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 739-40 (9th Cir. 2021). If the treating physician will testify about opinions beyond those formed in the course of their treatment, they become "hybrid experts" subject to the written-report disclosure requirement of Federal Rule of Civil Procedure 26(a)(2)(B). *Goodman*, 644 F.3d at 819-20, 826.

Plaintiff has not made any Rule 26(a)(2)(B) disclosures of retained or hybrid experts, nor has he moved for additional time with which to make such disclosures.[11] Accordingly, Dr. Barrow, Dr. Babol, and Dr. Porter would only be permitted to testify about opinions they formed during the course of their treatment, assuming Plaintiff's disclosures complied with Rule 26(a)(2)(C). The parties have disclosed no evidence indicating that Dr. Barrow, Dr. Babol, or Dr.

---

[11] In the March 11, 2021 Scheduling Order, the Hon. Salvador Mendoza, Jr., ordered Plaintiff to disclose his expert witnesses and related Rule 26(a)(2) reports to Defendants by September 14, 2021 and file a notice of compliance. ECF No. 10 at 3 § B. Plaintiff did not file this notice of compliance. Defendants did receive a disclosure of lay and expert witnesses from Plaintiff on September 13, 2021, that identified Dr. Craig Barrow and "Foot & Ankle Clinic" (Dr. Babol's clinic) as expert witnesses, but that disclosure contained no Rule 26(a)(2) reports. ECF No. 42 at 2 ¶ 3; ECF No. 42-2.

Porter formed an opinion directly concerning the standard of care or causation in the course of Plaintiff's treatment.  Whether Plaintiff's medical negligence claim survives summary judgment thus depends on whether he has made a prima facie showing without retained-expert, hybrid-expert, or treating-physician opinions directly addressing the applicable standard of care and causation.

In *Miller v. Jacoby*, the Washington Supreme Court explained that the expert testimony requirement for a medical negligence claim does not apply "[w]hen medical facts are observable by a layperson's senses and describable without medical training."  33 P.3d 68, 71-72 (Wash. 2001) (en banc) (quotation omitted). The court found that accidentally leaving a foreign object in a patient's body is obvious medical negligence that does not require expert testimony on the proper standard of care, but the proper placement of a medical instrument was not observable and describable by a layperson, thus requiring expert testimony.  *Id.*; *see also Young*, 770 P.2d at 228 ("Where the determination of negligence does not require technical medical expertise, such as the negligence of amputating the wrong limb or poking a patient in the eye while stitching a wound on the face, the cases also do not require testimony by a physician.") (citations omitted).

Here, Plaintiff's allegations do not describe medical negligence so obvious that a layperson could readily identify that Defendants breached a standard of care and caused Plaintiff's harms.  The examples provided in *Miller* and *Young*

1   underscore that medical negligence must be straightforward and unmistakable to

2   be exempted from the expert testimony requirement.  *See Miller*, 33 P.3d at 71-72;

3   *Young*, 770 P.2d at 228.  A layperson may understand that foot pain warrants a

4   doctor's visit, but proper diagnosis and treatment requires expertise.  Whether

5   surgery is necessary, and whether the denial of that surgery caused harm, stray

6   even further from the realm of lay understanding.  Accordingly, the Court grants

7   summary judgment in favor of Defendants on Plaintiff's common law medical

8   negligence claim.

9            *2.  Negligent Training, Retention, and Supervision*

10          Plaintiff claims that Defendants failed to adequately train and supervise their

11  employees and that this negligence caused Plaintiff to suffer pain and injury.  ECF

12  No. 1-3 at 15-17 ¶¶ 4.1-4.29.  Plaintiff does not expressly define his negligent

13  retention claim, but Plaintiff is ostensibly alleging that Defendants acted

14  negligently in failing to terminate these employees.  Defendants seek summary

15  judgment on the basis that Plaintiff has not established that Defendants' employees

16  were acting outside the scope of their employment or caused Plaintiff's injuries.

17  ECF No. 38 at 19-20.  Plaintiff does not address Defendants' summary judgment

18  argument on his negligent training, retention, and supervision claims, although he

19  acknowledges that Defendants' motion presents the issue "[w]hether Plaintiff's

20  negligent retention, training, and supervision claims fail."  *See* ECF No. 47 at 9.

1    "[T]o hold an employer liable for negligently . . . retaining an employee who

2    is incompetent or unfit, a plaintiff must show that the employer had knowledge of

3    the employee's unfitness or failed to exercise reasonable care to discover unfitness

4    before . . . retaining the employee." *Anderson v. Soap Lake Sch. Dist.*, 423 P.3d

5    197, 206 (Wash. 2018) (en banc) (citations omitted).  Similarly, "[a]n employer

6    may be liable for negligently training or supervising an employee" by failing to

7    "exercise ordinary care" training or supervising their employees.  *Id.* at 208

8    (internal citation and quotation marks omitted).  Negligent training or supervision

9    claims apply *only* when the employee acted outside the scope of their employment.

10    *Id.*  Whether an employee was acting within the scope of employment depends on

11    whether they were fulfilling their job functions at the time of their injurious

12    conduct.  *Id.*

13    Given Plaintiff's failure to respond to Defendants' arguments, Plaintiff

14    appears to have abandoned his negligent training, retention, and supervision

15    claims.  *See Shapiro*, 634 F.3d at 1060.  Moreover, the record does not otherwise

16    reflect any factual basis for these claims, let alone a genuine dispute of material

17    fact.  Plaintiff has not identified who, among Defendants' employees, was

18    allegedly unfit, what facts indicate that Defendants should have known of that

19    unfitness, or what facts indicate that the employee was acting outside the scope of

20    their employment.  There is no basis for the Court to determine what Plaintiff is

alleging by these claims, let alone whether there is a genuine dispute of material fact. The Court grants summary judgment for Defendants on Plaintiff's negligent training, retention, and supervision claims.

Accordingly, **IT IS ORDERED:**

1.    Defendants' Motion for Summary Judgment, **ECF No. 38,** is **GRANTED**.

2.    All claims are **DISMISSED with prejudice**, with all parties to bear their own costs and attorney fees.

3.    All other pending motions are **DENIED AS MOOT.**

4.    All hearings and other deadlines are **STRICKEN.**

The Clerk's Office is directed to **ENTER JUDGMENT** in Defendants' favor and **CLOSE** this file. **IT IS SO ORDERED.**

DATED December 8, 2022.


_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE